1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7
8

**CRYSTAL RICHARDSON-BASS,**

**CASE NO. 1-19-cv-01566-AWI-SAB**

9

**Plaintiff,**

10

v.

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO DISMISS**

11

**STATE CENTER COMMUNITY COLLEGE DISTRICT; FRESNO CITY COLLEGE; and JERRY HENTZLER,**

12
13

**Defendants.**

(Doc. No. 9)

14
15

# I. Introduction

16

This lawsuit is about a male college teacher who allegedly sexually harassed and then

17

retaliated against one of his female students.  The student is Plaintiff Crystal Richardson-Bass

18

("Plaintiff").  The college teacher is Defendant Jerry Hentzler ("Hentzler").  The college is

19

Defendant Fresno City College ("the College").  The public entity that operates and controls the

20

College is Defendant State Center Community College District ("SCCCD").

21

Plaintiff filed this lawsuit and pleaded several claims against Hentzler, the College, and

22

SCCCD, including claims of harassment and retaliation under Title IX and California tort claims

23

of intentional infliction of emotional distress and negligent infliction of emotional distress.

24

Hentzler and SCCCD then collectively moved the Court to dismiss Plaintiff's claims pursuant to

25

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Hentzler and SCCCD also moved the

26

Court to strike several allegations in Plaintiff's complaint pursuant to Rule 12(f).  Those motions

27

are now before the Court.

28

## II.   Legal Standards

**1.      Rule 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the claimant's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."  Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; and (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the

1 opposing party to be subjected to the expense of discovery and continued litigation.  Levitt v.

2 Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).  In assessing a motion to dismiss, courts may

3 consider documents attached to the complaint, documents incorporated by reference in the

4 complaint, or matters subject to judicial notice.  In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046,

5 1051 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to

6 amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d

7 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be

8 futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v.

9 County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

10 **2.    Rule 12(f).**

11       Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from any

12 pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

13 Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion is to avoid the costs that arise from

14 litigating spurious issues by dispensing with those issues prior to trial.  See Whittlestone, Inc. v.

15 Handi-Craft Co., 618 F.3d 970, 973 (9th Cir 2010); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d

16 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important

17 relationship to the claim for relief or the defenses being pleaded."  Whittlestone, 618 F.3d at 974;

18 Hawkins v. Medtronic, Inc., 62 F.Supp.3d 1144, 1149 (E.D. Cal. 2014).  Impertinent matter is

19 defined as "statements that do not pertain, and are not necessary, to the issues in question."

20 Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.  Scandalous matters are

21 allegations "that unnecessarily reflects on the moral character of an individual or states anything in

22 repulsive language that detracts from the dignity of the court," and "includes allegations that cast a

23 cruelly derogatory light on a party or other person."  Hawkins, 62 F.Supp.3d at 1149; see also

24 Pigford v. Veneman, 215 F.R.D. 2, 4 (D. D.C. 2003).  Redundant allegations are allegations that

25 "constitute a needless repetition of other averments or are foreign to the issue."  Hawkins, 62

26 F.Supp.3d at 1149 Sliger v. Prospect Mortg., LLC, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011).

27 Granting a motion to strike may be proper if it will make the trial less complicated or if allegations

28 being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration

as a defense and that their presence in the pleading will be prejudicial to the moving party.  See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527-28 (9th Cir. 1993); Hawkins, 62 F.Supp.3d at 1149.  The grounds for the motion to strike must appear on the face of the pleading or from matters that are properly the subject of judicial notice.  See Fantasy, 984 F.2d at 1528.  Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy.  Hawkins, 62 F.Supp.3d at 1149; Sliger, 789 F.Supp.2d at 1216.

The proper procedure for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f).  See Paul v. Gomez, 190 F.R.D. 402, 404 (W. D. Va. 2000); Outen v. Baltimore County, 177 F.R.D. 346, 348 (D. Md. 1999); Arenson v. Whitehall Convalescent & Nursing Home, Inc., 880 F.Supp. 1202, 1214 (N.D. Ill. 1995).  However, where a motion is in substance a Rule 12(b)(6) motion but is incorrectly denominated as a Rule 12(f) motion to strike, the Court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion.  See Outen, 177 F.R.D. at 348; Egan v. Pan Am. Airways, 62 F.R.D. 710, 712 (S.D. Fla. 1974); South v. United States, 40 F.R.D. 374, 376 (N.D. Miss. 1965).

### III.   Facts[1]

Plaintiff was a college student at the College.  In August 2018, during her second semester, Plaintiff took two horticulture classes.  The classes were taught by Hentzler.  On the first day of class, Plaintiff arrived early to one of the classes with Hentzler.  Plaintiff talked with Hentzler, asking questions about the class and horticulture.  During the conversation, Hentzler abruptly asked Plaintiff, "Can we sleep together?"  Plaintiff said no, telling Hentzler that she was married and could not engage in such conduct.

About a week later, Hentzler told Plaintiff in class that he hated the size of his legs because they were skinny and he inherited his legs from his mother.  Hentzler talked to Plaintiff about how old he was.  This made Plaintiff uncomfortable, and Plaintiff felt as though Hentzler was

---

[1]  The facts come from the factual allegations in Plaintiff's complaint, which the Court construes as true.  See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

grooming her in the event that she changed her mind regarding Hentzler's earlier sexual proposition.

In or around October 2018, Plaintiff won the first-place prize at the Big Fresno Fair for her plant entry.  Typically, winners of this event have their individual picture taken with their plant and placed on the poster board in the school office for display.  It was Hentzler's responsibility to take and post the picture.  However, rather than take a photo of Plaintiff individually with her plant, Hentzler used a previous group photo that included Plaintiff with other students, and Hentzler placed the photo on the bottom of the poster board in the office.

In November 2018, Plaintiff's horticulture class took a field trip to Sequoia National Park.  At the park, Plaintiff used the bathroom and then asked Hentzler if she could purchase a bottle of water from him in order to wash her hands.  Hentzler told Plaintiff that because Plaintiff had not purchased a pre-made lunch, Plaintiff could not purchase a bottle of water from him at that time.  Hentzler knew that Plaintiff was not in a financial position to purchase a pre-made lunch.  Hentzler had extended credit to other students who were also unable to purchase a pre-made lunch, but Hentzler never extended the same credit to Plaintiff.  At the end of the field trip, there was a surplus of water bottles.

In or around November 2018, Hentzler brought apple cider and donuts to class.  Plaintiff arrived to class after the donuts were eaten.  Plaintiff said to Hentzler, "Hey Jerry I got some cider but I missed the donuts."  Doc. No. 1 at 11.  Hentzler responded in front of the class, "That's okay, you don't need any anyways."  Id.  Plaintiff felt humiliated because she interpreted the comment to be about her body weight.

In or around December 2018, Plaintiff and some classmates volunteered to help at the College Craft Fair.  Plaintiff was the first to arrive.  As a thank you to the volunteers, Hentzler gave free plants to the volunteers and purchased lunch for them.  However, Hentzler neither bought lunch for Plaintiff nor gave her a free plant.  Plaintiff was the only student volunteer that Hentzler did not buy lunch for.

/ / /

The Tower District, which is a neighborhood in Fresno, distributed a monthly newspaper. The volunteers at the College Craft Fair customarily had their names mentioned in the newspaper. Hentzler intentionally excluded Plaintiff's name from the newspaper.

On or around December 11, 2018, Plaintiff went to the College's campus counselling center to file a sexual harassment complaint against Hentzler.  Plaintiff was directed to speak with Lorraine Smith ("Smith").   While Plaintiff spoke with Smith, Smith stopped Plaintiff from speaking and told Plaintiff that Plaintiff could not complain about sexual harassment because Hentzler had only asked for sex on one occasion.  Smith refused to accept Plaintiff's complaint against Hentzler.

Following the meeting with Smith, Plaintiff met with Hentzler to pay for a set of poinsettias.  Plaintiff asked Hentzler why he made her pay for the poinsettias when Hentzler had given poinsettias to the other volunteers for free.  Hentzler became angry at Plaintiff and shouted at her, "What's wrong with you?"  Id.  This occurred in front of the entire class, humiliating Plaintiff.

Plaintiff's foregoing incidents with Hentzler and Smith caused Plaintiff to suffer emotional and psychological distress, humiliation, mental and physical pain, anguish, lost past and future income, employment benefits, career damage, lost wages, and medical expenses.

On December 11, 2018, Plaintiff filed an administrative claim with the College concerning Hentzler's sexual proposition and treatment towards Plaintiff.  Plaintiff never received a response to this claim.

On December 13, 2018, Plaintiff filed another administrative claim with the College concerning Smith's indifference to Plaintiff's report of sexual harassment.  Plaintiff never received a response to this claim.

On January 29, 2019, Plaintiff filed an administrative claim with the California Department of General Services Office of Risk and Insurance Management concerning Hentzler's sexual proposition and treatment towards Plaintiff and Smith's indifference to Plaintiff's report of sexual harassment.  Plaintiff never received a response to this claim.

/ / /

On February 12, 2019, Plaintiff filed an administrative claim with the City of Fresno's Risk Management Department concerning Hentzler's sexual proposition and treatment towards Plaintiff.

On February 19, 2019, Plaintiff received a letter from the City of Fresno's Personnel Services Department, informing Plaintiff that the City of Fresno rejected her claim from February 12, 2019.

On September 30, 2019, Plaintiff filed this lawsuit in California state court against Hentzler, the College, and SCCCD.  Plaintiff pleaded the following claims against the Defendants:

1. Intentional infliction of emotional distress against Hentzler;

2. Negligent infliction of emotional distress against the College and SCCCD;

3. Negligent hiring, supervision, and retention against the College and SCCCD;

4. Vicarious liability for Hentzler's conduct against the College and SCCCD;

5. Harassment in an educational institution against Hentzler, the College, and SCCCD; and

6. Teacher-to-student harassment and retaliation under Title IX of the federal Education Amendments of 1972 against Hentzler, the College, and SCCCD.

Based on each of the foregoing claims, Plaintiff prayed for general damages, special damages, and punitive damages.

On November 1, 2019, Defendants removed this lawsuit to this Court.  Defendants then filed the motions that are now before the Court.

## IV.   Analysis

## 1.   The California Tort Claims Act.

### A.   Presentation of claim to correct public entity.

#### i.   Defendants' arguments.

Plaintiff did not present her administrative claims to SCCCD's clerk, secretary, auditor, or governing body.  Instead, Plaintiff sent her administrative claims to the California Department of Rehabilitation, the California Community College Chancellor's Office ("CCCCO"), the California

1   Department of General Services, and the City of Fresno.  Therefore, Plaintiff did not exhaust her

2   administrative remedies under California's Tort Claims Act because Plaintiff did not present her

3   claims to the correct entity under the Act, which is the local entity that the claims are against,

4   SCCCD.  Because Plaintiff did not exhaust her administrative remedies before filing this lawsuit,

5   Plaintiff's California claims should be dismissed.

6                    ***ii.***        ***Plaintiff's arguments.***

7          Plaintiff's administrative claims ultimately reached SCCCD and the College.  This is

8   because Plaintiff presented her claims to CCCCO, and then CCCCO sent a letter to SCCCD, dated

9   December 18, 2018, that included Plaintiff's administrative complaints, dated December 11, 2018,

10  and December 13, 2018.  SCCCD investigated the claims and sent Plaintiff a rejection letter, dated

11  April 15, 2019.  These facts show that Plaintiff sufficiently presented her administrative claims

12  under the Tort Claims Act.

13                   ***iii.***       ***Discussion.***

14         Section 905 of California Government Code requires that, subject to some exceptions, "all

15  claims for money or damages against local public entities" be "presented in accordance with

16  Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910)."  Cal.

17  Gov. Code § 905.  A local public entity includes "a county, city, district, public authority, public

18  agency, and any other political subdivision or public corporation in the State, but does not include

19  the State."  Id. at § 900.4.

20         Section 915(a) states that a claim is to "be presented to a local public entity by either of the

21  following means: (1) Delivering it to the clerk, secretary, or auditor thereof [; or] (2) Mailing it to

22  the clerk, secretary, auditor, or to the governing body at its principal office."  Id. at § 915(a).

23  Section 915(e) sets forth how "actual receipt" may satisfy the foregoing presentation requirement:

24  "A claim, amendment, or application shall be deemed to have been presented in compliance with

25  this section even though it is not delivered or mailed as provided in this section if, within the time

26  prescribed for presentation thereof, . . .  (1) It is actually received by the clerk, secretary, auditor,

27  or board of the local public entity."  Id. at § 915(e) (emphasis added); see also DiCampli-Mintz v.

28  Cty. of Santa Clara, 55 Cal. 4th 983, 990 (2012).  The California Supreme Court interpreted

section 915(e)(1), stating that the statute "reflects the Legislature's intent that a misdirected claim will satisfy the presentation requirement if the claim is 'actually received' by a statutorily designated recipient." <u>DiCampli-Mintz</u>, 55 Cal. 4th at 992. "Thus, compliance with section 915(e)(1) requires actual receipt of the misdirected claim by one of the designated recipients." <u>Id.</u>

Plaintiff presented the Court with evidence showing that CCCCO sent a letter to SCCCD, dated December 18, 2018, that included copies of the administrative claims that Plaintiff presented to CCCCO on December 11, 2018, and December 13, 2018, concerning the alleged harassment and retaliation by Hentzler and Smith. Defendants do not dispute that SCCCD actually received Plaintiff's administrative claims. Therefore, Plaintiff's failure to present her claims directly to SCCCD's clerk, secretary, auditor, or governing body does not mean that Plaintiff failed to substantially comply with the administrative claim presentation requirement of the Tort Claims Act. On that basis, the Court will deny Defendants' motion to dismiss Plaintiff's California claims on grounds that Plaintiff failed to present her administrative claims to SCCCD.

**B.**     **Six-month filing deadline.**

*i.*     *Defendants' arguments.*

Plaintiff alleges that the City of Fresno rejected her administrative claim on February 19, 2019. Plaintiff did not file her lawsuit until October 1, 2019, which was more than six months after the alleged rejection by the City of Fresno. This means that Plaintiff failed to timely file her lawsuit within the six-month deadline of section 945.6 of California Government Code. Because Plaintiff failed to timely file her lawsuit, Plaintiff's California claims should be dismissed.

*ii.*     *Plaintiff's arguments.*

Plaintiff received a letter from SCCCD, dated April 15, 2019. In the letter, SCCCD stated that it rejected Plaintiff's administrative claims. Therefore, Plaintiff's lawsuit, which was filed on October 1, 2019, was timely filed within the six-month deadline of section 945.6.

*iii.*     *Discussion.*

Section 945.6 of California Government Code states, "Except as provided in Sections 946.4 and 946.6 and subject to subdivision (b), any suit brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing

with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division must be commenced: (1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail."  Cal. Gov. Code § 945.6(a)(1).

Plaintiff presented evidence showing that SCCCD rejected her administrative claims on April 15, 2019.  Therefore, because Plaintiff filed this lawsuit on October 1, 2019, Plaintiff timely filed the lawsuit within the six-month deadline of section 945.6(a)(1).

### C. Substantial compliance with claim presentation requirements.

#### i. Defendants' arguments.

First, assuming Plaintiff presented her administrative claims to SCCCD, Plaintiff's administrative claims are facially defective because they failed to include, one, Plaintiff's post office address; two, a general description of indebtedness, obligation, injury, damage, loss incurred, or the amount of the claim; and three, notice of whether the claim would be a limited civil case or lead to litigation.  As a result, Plaintiff's administrative claims fail to include the required information under section 910 of California Government Code.  This means that Plaintiff failed to exhaust her administrative remedies before filing this lawsuit.  On that basis, Plaintiff's California claims should be dismissed.

Second, Defendants did not waive their defense as to the sufficiency of the Plaintiff's administrative claims, and this is because Plaintiff's administrative claims failed to include the required information for an administrative claim under section 910, including a post office address, as discussed above.

#### ii. Plaintiff's arguments.

First, Plaintiff's administrative claims included Plaintiff's phone number and email address, so Defendants had the means to contact Plaintiff to inform her of any perceived deficiencies with the administrative claims.  Additionally, the administrative claims "adequately disclosed the existence of a claim which would result in a lawsuit," and this is because the claims "describe[] Plaintiff's reporting of the sexual harassment by [Hentzler] and [Hentzler's]

///

subsequent retaliation against Plaintiff to a Dean of the College — Lorraine Smith."  Doc. No. 17 at 10.

Second, SCCCD did not inform Plaintiff of any deficiencies with her administrative claims.  Therefore, Defendants waived any defenses based on deficiencies with the administrative claims.

### iii.   Discussion.

#### a.   Post office address.

Section 910 of California Government Code states that an administrative claim "shall show all of the following" information:

(a) The name and post office address of the claimant.

(b) The post office address to which the person presenting the claim desires notices to be sent.

(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.  If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim.  However, it shall indicate whether the claim would be a limited civil case.

Cal. Gov. Code § 910.

"Where there has been an attempt to comply [with the foregoing requirements] but the compliance is defective, the test of substantial compliance controls."  White v. Moreno Valley Unified Sch. Dist., 181 Cal. App. 3d 1024, 1031 (1986) (citations omitted).  "Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit."  Id.

There is no dispute that Plaintiff failed to include her post office address in the

administrative claims.  Plaintiff argues, instead, that she substantially complied with the post

office address requirement because her claims included her email address and phone number.  The

Court rejects Plaintiff's argument for four reasons.  First, the statutory requirement is clear: the

claimant must include a post office address, not an email address or a phone number.  Presumably

the legislative intent behind this statutory requirement was to give the local entity the means to

contact the claimant in writing, either to investigate the claim, to settle the claim, to deny the

claim, or to give notice of deficiencies with the claim.  Under Plaintiff's theory, the local entity

could accomplish these tasks by using the claimant's email address.  But the Court is unwilling to

interpret the statutory requirement in a way that contravenes or expands upon the statute's plain

text.  Email communication has been commonplace for at least a decade, yet the California

legislature has not changed the statutory requirement to permit an email address or phone number

in lieu of a post office address.  So the Court will not expand the post office address requirement

in a way that the California legislature has not done — especially when Plaintiff has failed to show

that she was incapable of complying with the post office requirement.  See DiCampli-Mintz v.

Cty. of Santa Clara, 55 Cal. 4th 983, 992 (2012) (interpreting the claims presentation requirements

of the Tort Claims Act, and stating: "Words used in a statute should be given the meaning they

bear in ordinary use.  If the language is clear and unambiguous there is no need for construction,

nor is it necessary to resort to indicia of the intent of the Legislature. . . .  A court may not, under

the guise of construction, rewrite the law or give the words an effect different from the plain and

direct import of the terms used.  Further, we must assume that the Legislature knew how to create

an exception if it wished to do so.") (citations and quotations omitted).  Consequently, the Court

concludes that Plaintiff failed to comply with the post office address requirement of section 910.

Second, Plaintiff did not cite to any authority holding that the post office address

requirement may be deemed substantially complied with if the post office address is omitted in the

administrative claim but an email address or phone number is included.

Third, there is at least one California authority that affirmed the dismissal of a lawsuit

because the plaintiff failed to comply with the post office address requirement in the

administrative claim.  See Eppstein v. Berkeley, 52 Cal. App. 2d 395, 397 (1942).  The California

1  Supreme Court discussed Eppstein, stating that the case represents a situation where an

2  administrative claim can be successfully challenged for "failure to comply entirely with a

3  particular statutory requirement." City of San Jose v. Superior Court, 12 Cal. 3d 447, 456 (1974).

4         Fourth, in discussing Eppstein and other cases that challenged administrative claims for

5  failing to comply entirely with a particular claims presentation requirement, the California

6  Supreme Court stated that the following two tests should be applied to "gauge the sufficiency of a

7  particular claim": first, "Is there some compliance with all of the statutory requirements[?]; and,

8  second, "[I]f so, is this compliance sufficient to constitute substantial compliance?" Id. at 456-57;

9  see also Del Real v. City of Riverside, 95 Cal. App. 4th 761, 769 (2002) ("Substantial compliance

10 contemplates that there is at least some compliance with all of the statutory requirements."); Loehr

11 v. Ventura Cty. Cmty. Coll. Dist., 147 Cal. App. 3d 1071, 1083 (1983) ("The doctrine of

12 substantial compliance, however, cannot cure total omission of an essential element from the

13 claim or remedy a plaintiff's failure to comply meaningfully with the statute.").  As for Plaintiff's

14 administrative claims, it cannot be said that there was "some" compliance with the post office

15 address requirement.  No post office address was included.  Unlike compliance with other

16 requirements of section 910 where "some" compliance is conceivable — such as the requirements

17 that the administrative claim show the "circumstances of the occurrence or transaction which gave

18 rise to the claim asserted" or a "general description of the . . . injury," Cal. Gov. Code § 910(c)-(d)

19 — compliance with the post office address is an either-or proposition: the administrative claim

20 either includes a post office address or it does not.[2]

21        Therefore, because Plaintiff completely failed to comply with the post office address

22 requirement of section 910(a)-(b), the Court concludes that Plaintiff did not substantially comply

23 with the claim presentation requirements of section 910.

24              *b.      Indebtedness, injury, damage, and prospect of litigation.*

25        As noted above, section 910 states that an administrative claim "shall show . . .  (d) A

26 general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may

27 
28
_____

[2] To be fair, it is conceivable that an administrative claim could include an incorrect or incomplete post office address, which may lead a party to raise the "some" or "substantial compliance" argument.  But the Court need not decide that issue because it does not exist here.

be known at the time of presentation of the claim. . . . [and] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.  If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim.  However, it shall indicate whether the claim would be a limited civil case." Cal. Gov. Code § 910(d)-(f).

An administrative claim that fails to substantially comply with section 910 "may still be considered a 'claim as presented' if it puts the public entity on notice both that the claimant is attempting to file a valid claim and that litigation will result if the matter is not resolved."  Del Real, 95 Cal. App. 4th at 769.  Stated slightly differently, for an administrative claim to be considered a "claim as presented," the claim must at least "indicat[] that a demand [is] being made for compensation for injuries due to defendant[] . . . and that the failure to satisfy the plaintiff's demand could result in litigation."  Green v. State Ctr. Cmty. Coll. Dist., 34 Cal. App. 4th 1348, 1358 (1995).

Plaintiff's administrative claims, dated December 11, 2018, and December 13, 2018, sufficiently show a "general description of the indebtedness, obligation, injury, [or] damage."  Cal. Gov. Code § 910(d).  The claims include the following allegations.  In September 2018, around the second week of school, Plaintiff was the first student to arrive in the classroom.  Plaintiff began speaking with Hentzler about what the students were going to learn.  Hentzler then interrupted Plaintiff and asked, "Do you want to sleep together?"  Doc. No. 17-1 at 37.  Plaintiff told Hentzler no and said that she was not interested.  Plaintiff felt sexually harassed.  Then, because Plaintiff denied Hentzler's sexual proposition, Hentzler "took it out on [Plaintiff] throughout the semester by humiliating [Plaintiff] in class . . . ."  Id.  For example, Hentzler shouted at Plaintiff, "What's wrong with you!" in front of the entire class after Plaintiff asked Hentzler why she was being required to pay for poinsettias when other students were not. Additionally, after Hentzler provided donuts to other students in the class, Plaintiff asked Hentzler for a donut, to which Hentzler told Plaintiff in front of the class, "That's OK you don't need any

anyway." Id. at 39.  This made Plaintiff feel humiliated and embarrassed because Plaintiff was self-conscious about her body weight.  The Court concludes that the foregoing allegations sufficiently show injury and damage for purposes of section 910.

However, the administrative claims say nothing about litigation resulting "if the matter is not resolved," Del Real, 95 Cal. App. 4th at 769, or "that a demand was being made for compensation for injuries."  Green, 34 Cal. App. 4th at 1358.  Section 910(f) plainly states that the administrative claim must identify the amount claimed if the amount claimed is less than $10,000, or the administrative claim must indicate whether the claim would be limited to a civil case if the amount claimed is greater than $10,000.  Plaintiff's administrative claims say nothing about the amount claimed or whether the claims would be limited to a civil case.  Nor do the administrative claims say anything about potential legal action.  Therefore, the Court concludes that Plaintiff's administrative claims fail to sufficiently show that litigation will result if the matter is not resolved and that a demand is being made for compensation.  Although a reasonable public entity could infer from Plaintiff's administrative claims that legal action may result from the claims, the claims nonetheless fail to show that Plaintiff was pursuing compensation and contemplating legal action if the administrative claims were not favorably resolved.  See Del Real, 95 Cal. App. 4th at 769; Mouchette v. Bd. of Educ., 217 Cal. App. 3d 303, 311 (1990) ("The purpose of the filing requirement is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims.") (emphasis added) (citations and quotations omitted).

Therefore, because Plaintiff completely failed to comply with the "amount claimed" and "civil case" requirement of section 910(f), the Court concludes that Plaintiff did not substantially comply with the claim presentation requirements of section 910.

### c.     Waiver.

If the administrative claim fails to provide a post office address, then, first, the public entity is not required to give notice of the insufficiency of the claim or of the entity's action on the claim; and, second, no waiver of the entity's defense as to the sufficiency of the claim will result from the entity's failure to give notice of the insufficiency.  Cal. Gov. Code § 911 ("Any defense

1  as to the sufficiency of the claim based upon a defect or omission in the claim as presented is

2  waived by failure to give notice of insufficiency with respect to the defect or omission as provided

3  in Section 910.8, except that no notice need be given and no waiver shall result when the claim as

4  presented fails to state either an address to which the person presenting the claim desires notices to

5  be sent or an address of the claimant.").

6  　　　　Therefore, because Plaintiff did not include a post office address in her administrative

7  claims, Defendants were not required to give notice to Plaintiff of the insufficiency of her claims,

8  and Defendants did not waive the defense as to the sufficiency of the claim.

9  　　　　　　　　　　　_d._　　_Conclusion._

10  　　　　Compliance with the administrative claim presentation requirements of the Tort Claims

11  Act, discussed above, is a "state substantive limitation."  State of California v. Superior Court, 32

12  Cal. 4th 1234, 1240 (2004).  Accordingly, compliance "is a condition precedent to a tort action

13  and the failure to present the claim bars the action."  Id.  Because Plaintiff did not substantially

14  comply with the claim presentation requirements, Plaintiff's California claims are barred in this

15  lawsuit.  On that basis, the Court will grant Defendants' motion to dismiss Plaintiff's California

16  claims.[3]

17  **2.    Intentional infliction of emotional distress.**

18  　　　　**A.    Defendants' arguments.**

19  　　　　Plaintiff's claim for intentional infliction of emotional distress ("IIED") should be

20  dismissed because Plaintiff's allegations about Hentzler's conduct do not support an IIED claim.

21  At most, Plaintiff's allegations show that Hentzler made a romantic or sexual overture towards

22  Plaintiff and then engaged in various instances of discourteous conduct towards Plaintiff.  Those

23  allegations do not plead the requisite extreme and outrageous conduct for an IIED claim.

24  　　　　**B.    Plaintiff's arguments.**

25  　　　　First, reasonable people can disagree about whether Hentzler's alleged conduct is so

26  extreme and outrageous as to support an IIED claim, meaning it is for the jury to determine

27

28

---

[3]  It is not clear to the Court whether Plaintiff can cure her failure to comply with the administrative claim presentation requirements.  The parties did not directly address that issue.  Therefore, at this time, the dismissal of Plaintiff's California claims will not be with prejudice.

1 whether the conduct is sufficiently extreme and outrageous.

2       Second, conduct may be considered sufficiently outrageous where the defendant abuses a

3 position that gives him or her power to damage the plaintiff's interests, which was the case here.

4 Hentzler was Plaintiff's college teacher, which meant he was in a superior position of authority

5 over Plaintiff.

6       Third, Plaintiff sufficiently pleaded the requisite emotional distress for an IIED claim.

7 Plaintiff alleged that she suffered anxiety, embarrassment, humiliation, depression, shock, and

8 injury as a result of Hentzler's conduct.  Plaintiff also alleged that she incurred medical expenses

9 caused by Hentzler's conduct.

10      **C.**    **Discussion.**

11       "The elements of a prima facie case for the tort of intentional infliction of emotional

12 distress [are] as follows: (1) extreme and outrageous conduct by the defendant with the intention

13 of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

14 plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation

15 of the emotional distress by the defendant's outrageous conduct."  Davidson v. City of

16 Westminster, 32 Cal. 3d 197, 209 (1982).  "Outrageous" conduct is defined as conduct that is "so

17 extreme as to exceed all bounds of that usually tolerated in a civilized community," id., "regarded

18 as atrocious and utterly intolerable in a civilized community," Melorich Builders, Inc. v. Superior

19 Court, 160 Cal. App. 3d 931, 936 (1984), or "outside the bounds of decency."  Christensen v.

20 Superior Court, 54 Cal. 3d 868, 904 (1991).  "Generally, the case is one in which the recitation of

21 the facts to an average member of the community would arouse his resentment against the actor,

22 and lead him to exclaim, 'Outrageous!'"  Golden v. Dungan, 20 Cal. App. 3d 295, 304 (1971).  "If

23 properly pled, a claim of sexual harassment can establish the outrageous behavior element of a

24 cause of action for intentional infliction of emotional distress."  Hughes v. Pair, 46 Cal. 4th 1035,

25 1051 (2009) (citations and quotations omitted).  "[E]vidence that the defendant engaged in a

26 pattern of conduct or repeated harassment may compound the outrageousness of incidents which,

27 taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional

28 / / /

distress." N. Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 132 (D. Mass. 2007) (internal quotation marks omitted).

Outrageous conduct has been contrasted with less egregious conduct for which recovery is not allowed, including "mere insults, indignities, threats, annoyances, petty oppressions and other trivialities," Agarwal v. Johnson, 25 Cal. 3d 932, 946 (1979), rough or crude sexual language, Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009); Golden, 20 Cal. App. 3d at 304, and "occasional acts that are definitely inconsiderate and unkind." Id. However, "[a]lthough . . . mere insulting language, without more, ordinarily would not constitute extreme outrage," the addition of "aggravated circumstances" may make the defendant's conduct outrageous. Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 499 (1970).

A defendant's conduct is more likely to be outrageous if the defendant is in a position or relationship with the plaintiff which makes the defendant's conduct have a particularly severe impact on the plaintiff. For example, in Bundren v. Superior Court, 145 Cal. App. 3d 784, 791 n.8 (1983), the court quoted section 46 of the Restatement Second of Torts, which stated:

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. . . . In particular[,] police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

Id. (citations omitted). In dealing with an IIED claim, one federal district court characterized a school authority's position over a college student as follows: "The student stands in a particularly vulnerable relationship vis-a-vis the university, the administration, and the faculty. She is away from home, subject to the authority and discipline of the institution, and under enormous pressure to succeed." Russell v. Salve Regina Coll., 649 F. Supp. 391, 402 (D.R.I. 1986).

Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court. Godfrey v. Steinpress, 128 Cal. App. 3d 154, 173 (1982). But if reasonable people may disagree, then it is for the jury to determine whether the conduct was outrageous. Alcorn, 2 Cal. 3d 493.

///

The Court concludes that, at a minimum, reasonable people may disagree as to whether Hentzler asking Plaintiff, "Can we sleep together?" is outrageous conduct for purposes of an IIED claim.  Important to this conclusion is the fact that Hentzler was Plaintiff's college teacher, meaning he held a position of authority over Plaintiff.  Additionally, there are no allegations that Plaintiff implicitly or expressly welcomed or invited Hentzler's sexual proposition.  Rather, Plaintiff alleged that Hentzler's sexual proposition was brusquely and unexpectedly made while Plaintiff talked with Hentzler about the class on the first day of the semester.  Finally, Defendants failed to cite any relevant authority holding that the foregoing conduct is considered, as a matter of law, neither atrocious nor utterly intolerable in today's civilized community.

The cases cited by Defendants are distinguishable.  None of the cases involved an explicit sexual proposition made by a teacher towards a student while the two were alone in a classroom. In fact, none of the cases even involved a teacher and a student.  See Hughes v. Pair, 46 Cal. 4th 1035 (2009); Haberman v. Cengage Learning, 180 Cal. App. 4th 365 (2009); Chang v. Lederman, 172 Cal. App. 4th 67 (2009); Kraslawsky v. Upper Deck Co., 56 Cal. App. 4th 179 (1997); Yurick v. Superior Court, 209 Cal. App. 3d 1116 (1989).

As for Plaintiff's other alleged conduct by Hentzler, the Court concludes that the alleged conduct is not sufficiently outrageous to support a claim for IIED.  The other alleged conduct amounted to, at most, "mere insults, indignities, . . . annoyances, petty oppressions and other trivialities," Agarwal, 25 Cal. 3d at 946, and "occasional acts that are . . . inconsiderate and unkind." Golden, 20 Cal. App. 3d at 304.

## 3.   Negligent infliction of emotional distress.

### A.   Defendants' arguments.

There is no independent tort in California for negligent infliction of emotional distress ("NIED").

### B.   Plaintiff's arguments.

Plaintiff alleged that a duty existed to enforce the policies and procedures of the College, and Plaintiff alleged that students, including Plaintiff, had the right to attend safe, secure, and peaceful campuses.

**C.    Discussion.**

In California, "there is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993). Consequently, there is no independent tort of NIED in California. Id. Accordingly, the Court will dismiss Plaintiff's claim for NIED with prejudice on grounds that California does not recognize such an independent tort.

**4.    Harassment in educational institution under Title IX and California law.**

**A.    Severe and offensive conduct.**

*i.    Defendants' arguments.*

Under both Title IX and California law, to plead a claim for harassment in an educational institution, the plaintiff must plead facts sufficient to show that the plaintiff suffered sexual harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school. Hentzler's alleged conduct is not sufficiently severe or frequent to support her harassment claims.

*ii.    Plaintiff's arguments.*

Plaintiff alleged harassment by Hentzler that, first, was sufficiently severe, pervasive, and objectively offensive and, second, deprived Plaintiff of access to the educational opportunities or benefits provided by the school. For example, Plaintiff alleged that Hentzler propositioned Plaintiff for sex, shouted at Plaintiff in front of the class, and commented about Plaintiff's weight in front of the class. Also, Plaintiff alleged that she was deprived of access to the educational benefits and opportunities provided by the school due to Hentzler's conduct. Based on these allegations, it is reasonable to infer that Hentzler's conduct — which caused Plaintiff to suffer anxiety, depression, extreme emotional distress, and humiliation — had a concrete and negative effect on Plaintiff's education or access to school-related resources.

*iii.    Discussion.*

In order to proceed on a claim under Title IX for teacher-to-student harassment, "the student must establish: (1) she or he was subjected to a sexually hostile environment or quid pro

quo sexual harassment; (2) she or he provided actual notice of the situation to an 'appropriate person,' who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and (3) the institution's response to the harassment amounted to 'deliberate indifference.'" Garcia v. Clovis Unified School Dist., 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009) (Ishii, J.) (citing Klemencic v. Ohio State Univ., 263 F.3d 504, 510 (6th Cir. 2001)); see also Heyman v. Nevada, 2017 WL 4767674, at *6 (D. Nev. Oct. 20, 2017); Doe v. Willits Unified Sch. Dist., 2010 WL 4922645, at *3 (N.D. Cal. Nov. 29, 2010), aff'd, 473 F. App'x 775 (9th Cir. 2012).  As for the first element, "[i]n a teacher to student sexual harassment case, the student must show that the harassing conduct was so severe or pervasive that the student was deprived of access to the education benefits provided by the school." Willits Unified Sch. Dist., 2010 WL 4922645, at *3 (citing Stanley v. Trustees of the Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir.2006)).  "Whether gender-oriented conduct rises to the level of actionable Title IX harassment depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." Hill v. Cundiff, 797 F.3d 948, 972 (11th Cir. 2015).  "Whether the sexual harassment by the teacher rises to an actionable level is a question of fact." Chancellor v. Pottsgrove Sch. Dist., 529 F. Supp. 2d 571, 573 (E.D. Pa. 2008).

"Like Title IX, [California's] Education Code prohibits discrimination on the basis of gender by any educational institution that receives financial assistance from the state." Hicks v. Bd. of Trustees of California State Univ., 2020 WL 1329389, at *4 (Cal. Ct. App. Mar. 23, 2020) (citing Cal. Ed. Code §§ 220, 66270).  "Because the Education Code's anti-discrimination provisions, like Title IX, are designed primarily to prevent recipients of state funding from using such funds in a discriminatory manner, a plaintiff asserting a damages claim under the statutes must similarly allege (1) he or she suffered severe, pervasive and offensive harassment that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the educational institution had actual knowledge of that harassment; and (3) the institution acted with deliberate indifference in the face of such knowledge." Id. (citations and quotations omitted).

For the same reasons that the Court concludes that Hentzler's alleged sexual proposition supports an IIED claim at the pleading phase, the Court concludes that, at a minimum, reasonable people may disagree as to whether Hentzler's alleged sexual proposition is sufficiently severe to warrant liability for sexual harassment in an educational institution under Title IX and California law.  This conclusion takes into account the following considerations.  First, as Plaintiff's teacher, Hentzler was in a position of authority over Plaintiff.  Second, the alleged sexual solicitation was direct, involving very little inuendo, and requiring a yes or no answer (i.e., "Can we sleep together?").  Third, the alleged sexual solicitation was made in the classroom while Plaintiff was talking to Hentzler about class.  Fourth, the alleged sexual solicitation was made while Hentzler and Plaintiff were alone in the classroom.  And fifth, the alleged sexual solicitation was uninvited, unencouraged, and unexpected by Plaintiff.  Notably, Defendants failed to cite any authority holding that a college teacher's uninvited solicitation of sex from a student in the classroom is insufficient to support a claim of sexual harassment under Title IX and California law.

As for Hentzler's other alleged conduct, the Court concludes that the conduct is not so severe or offensive to support a claim for sexual harassment in an educational institution under Title IX and California law.

**B.** **Deliberate indifference.**

*i.* *Defendants' arguments.*

First, Plaintiff failed to allege that SCCCD's response to Plaintiff's report to Smith caused Plaintiff to undergo further harassment.  Plaintiff allegedly told Smith on December 11, 2018, about Hentzler's alleged sexual proposition.  But there is only one alleged act of harassment that occurred after the report to Smith, and that is the incident where Plaintiff asked Hentzler why she was required to pay for poinsettias, to which Hentzler shouted, "What's wrong with you?"  This does not constitute deliberate indifference by SCCCD because the shouting incident does not amount to severe and pervasive harassment that deprived Plaintiff of educational opportunities.

Second, Plaintiff provided no specific allegations as to Smith's actual role at SCCCD that would give rise to the conclusion that Smith was an official with authority to address the alleged discrimination and institute corrective measures.

1

### ii.    *Plaintiff's arguments.*

First, Plaintiff sufficiently alleged that Defendants acted with deliberate indifference. Plaintiff alleged that Smith cut Plaintiff off mid-report and told Plaintiff that what Plaintiff experienced with Hentzler's sexual proposition was not harassment.  Plaintiff alleged that Defendants did not investigate Plaintiff's report to Smith.  This sufficiently alleges deliberate indifference.

Second, Defendants had actual knowledge of the harassment.  Plaintiff alleged that she reported the sexual harassment to Smith at the College, and Plaintiff alleged that Smith was a school representative of the College.  Therefore, Defendants had actual knowledge of the harassment.

### iii.    **Discussion.**

A school's response amounts to "deliberate indifference" when it is "clearly unreasonable in light of the known circumstances," such that the "official decision is not to remedy the violation."  Oden v. N. Marianas Coll., 440 F.3d 1085, 1089 (9th Cir. 2006) (citations omitted). "Deliberate indifference" is a high standard and requires conduct that is beyond mere negligence. See Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001); Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 383-84 (5th Cir. 2000); see also Oden, 440 F.3d at 1089 ("Nonetheless the record fails to demonstrate that the delay was more than negligent, lazy, or careless."); Williams v. Paint Valley Local Sch. Dist., 400 F.3d 360, 367 (6th Cir. 2005).  Deliberate indifference is a fact sensitive inquiry.  See Dallas Indep. Sch. Dist., 220 F.3d at 384.

"Deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 645 (1999); Stanley v. Trustees of California State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006). "It is sufficient for [the plaintiff] to allege that [the school's] deliberate indifference made [the plaintiff] vulnerable to sexual harassment.  Title IX does not require a subsequent sexual assault before a plaintiff can sue."  Farmer v. Kansas State Univ., 918 F.3d 1094, 1103 (10th Cir. 2019) (quotations omitted).  As stated by the Tenth Circuit,

[W]e have agreed — that once [the plaintiffs] show that the funding recipient was

deliberately indifferent to their complaints of peer sexual harassment, they can show the requisite harm caused by that deliberate indifference by alleging and proving that the prior sexual assaults were so grievous and the likelihood of continuing to encounter the sexual predators on campus so credible that [the school's] inaction by itself deprived [the plaintiffs] of the benefits under any education program receiving Federal financial assistance."

Id. at 1106 (quotations omitted).

The Court rejects Defendants' argument that Plaintiff failed to sufficiently allege deliberate indifference.  By alleging that Plaintiff had school-related encounters with Hentzler after Plaintiff unsuccessfully reported the sexual proposition to Smith, Plaintiff sufficiently alleged that there was a credible likelihood of continuing to encounter Hentzler.  As stated above, "[i]t is sufficient for [the plaintiff] to allege that [the school's] deliberate indifference made [the plaintiff] vulnerable to sexual harassment.  Title IX does not require a subsequent sexual assault before a plaintiff can sue."  Id. at 1103 (emphasis added) (quotations omitted).

The Court also rejects Defendants' argument that Plaintiff did not sufficiently allege Smith's role at SCCCD.  Plaintiff alleged that she "went to the campus counseling center and was directed to [Smith]."  Doc. No. 1 at ¶ 27.  Plaintiff also alleged that Smith talked with Plaintiff about the alleged sexual proposition.  Plaintiff also alleged that Smith was "an appropriate person" to speak with because Smith "was an official and Smith had authority to take corrective action to end the sexual harassment and retaliation."  Id. at ¶ 105.  These allegations are sufficient to show that Smith was an official with authority to address Plaintiff's report.

## 5.    Retaliation in educational institution under Title IX.

### A.    Defendants' arguments.

Plaintiff failed to allege any facts constituting retaliation by SCCCD after Plaintiff reported the sexual proposition to Smith on December 11, 2018.  Plaintiff also failed to allege any factual nexus between her report to Smith and the subsequent shouting incident with Hentzler.

### B.    Plaintiff's arguments.

Plaintiff did not adequately respond to Defendants' arguments.

### C.    Discussion.

The elements of a prima facie case of Title IX retaliation are (1) the plaintiff was engaged in protected activity; (2) the plaintiff suffered an adverse action; and (3) that there was a causal

1   link between the protected activity and the adverse action.  <u>Emeldi v. University of Oregon</u>, 698

2   F.3d 715, 724 (9th Cir. 2012). "In the Title IX context, speaking out against sex discrimination is

3   protected activity."  <u>Ollier v. Sweetwater Union High Sch. Dist.</u>, 768 F.3d 843, 868 (9th Cir.

4   2014) (citations omitted).  "[T]he adverse action element is present when a reasonable person

5   would have found the challenged action materially adverse, which in this context means it well

6   might have dissuaded a reasonable person from making or supporting a charge of discrimination."

7   <u>Id.</u> (citations and quotations omitted).  "[T]he causal link element of the retaliation framework [is

8   construed] broadly; a plaintiff merely has to prove that the protected activity and the adverse

9   action are not completely unrelated."  <u>Id.</u>  "[C]ausation may be inferred from circumstantial

10  evidence, such as the defendant's knowledge that the plaintiff engaged in protected activities and

11  the proximity in time between the protected action and the allegedly retaliatory."  <u>Id.</u> at 869.

12          "The burden on a plaintiff to show a prima facie case of retaliation is low.  Only a minimal

13  threshold showing of retaliation is required.  After a plaintiff has made this showing, the burden

14  shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged action.

15  If the defendant can do so, the burden shifts back to the plaintiff to show that the reason is

16  pretextual."  <u>Id.</u> at 867.

17          The Court will dismiss with prejudice Plaintiff's Title IX retaliation claim for two reasons.

18  First, the only possible alleged retaliation against Plaintiff for reporting to Smith is the subsequent

19  incident where Hentzler shouted at Plaintiff, "What's wrong with you?" after Plaintiff asked

20  Hentzler why he was making her pay for poinsettia plants.  This alleged conduct is insufficient to

21  satisfy the second and third elements of a Title IX retaliation claim.  The conduct was not so

22  materially adverse that it might have dissuaded a reasonable person from making or supporting a

23  charge of discrimination.  There are no particularized allegations that directly or circumstantially

24  show that Hentzler's conduct was caused by Plaintiff's report to Smith.  There is no allegation that

25  Hentzler knew Plaintiff reported to Smith, and there is no allegation as to exactly when Hentzler

26  shouted at Plaintiff, making it impossible to determine the proximity in time between the report to

27  Smith and the shouting incident.  Finally, the allegations show that Hentzler shouted at Plaintiff

28  / / /

1  because Plaintiff asked Hentzler why she didn't get a free poinsettia, not because she reported to

2  Smith.

3      Second, Plaintiff did not oppose Defendants' argument.  See Resnick v. Hyundai Motor

4  Am., Inc., 2017 WL 1531192, at *2 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument

5  raised in a motion to dismiss constitutes waiver of that argument."); Lopez v. County of Los

6  Angeles, 2016 WL 54123, at *2 (N.D. Cal. Jan. 5, 2016) ("[B]ecause Plaintiff failed to oppose

7  many arguments in the instant motion to dismiss, the Court may treat such non-opposition as

8  implicit consent to the merits of the arguments asserted, and consequently as consent to dismissal

9  of the Complaint.").

## 6.      Individual liability under Title IX.

### A.      Defendants' arguments.

12      Individual defendants cannot be liable for Title IX violations as a matter of law.  Non-

13  employer individuals cannot be personally liable for Title IX retaliation.  Therefore, Plaintiff's

14  Title IX claims against Hentzler fail as a matter of law.

### B.      Plaintiff's arguments.

16      Plaintiff did not adequately respond to Defendants' arguments.

### C.      Discussion.

18      The Court will dismiss with prejudice Plaintiff's Title IX claims against Hentzler for two

19  reasons.  First, there is no individual liability under Title IX.  Bose v. Bea, 947 F.3d 983, 988 (6th

20  Cir. 2020); Doe v. El Dorado Union High Sch. Dist., 2020 WL 1307190, at *3 (E.D. Cal. Mar. 19,

21  2020).  Second, Plaintiff failed to oppose Defendants' arguments.

## 7.      Motion to strike claim for punitive damages and attorney's fees.

### A.      Defendants' arguments.

24      First, SCCCD cannot be liable for punitive damages as a matter of law because SCCCD is

25  a public entity.  Additionally, punitive damages are not available for private actions brought under

26  Title IX.  Therefore, the Court should strike Plaintiff's prayer for, one, punitive damages against

27  SCCCD and, two, punitive damages deriving from the Title IX claims.

28  / / /

Second, punitive damages under California law are only recoverable if the defendant acted with oppression, fraud, or malice.  Conclusory allegations of such conduct do not support a claim for punitive damages.  Plaintiff's conclusory allegations against Hentzler fail to show malice, oppression, or fraud.  Therefore, Plaintiff's allegations do not support a claim of punitive damages against Hentzler.

Third, if the primary effect of a lawsuit is to advance or vindicate the plaintiff's personal economic interests, then an award of attorney's fees under section 1021.5 of the California Civil Procedure Code is improper.  Plaintiff seeks only to vindicate her own personal rights and economic interests in this lawsuit.  Therefore, Plaintiff is not entitled to attorney's fees under section 1021.5.

**B.**     **Plaintiff's arguments.**

Plaintiff did not adequately respond to Defendants' arguments.

**C.**     **Discussion.**

First, because Defendants argue that Plaintiff may not recover a claim for punitive damages or attorney's fees, Defendants' motion is "based entirely on the sufficiency" of Plaintiff's claims.  Walker v. McCoud Cmty. Servs. Dist., 2016 WL 951635, at *2 (E.D. Cal. Mar. 14, 2016). The proper vehicle for challenging the sufficiency of a claim is a motion to dismiss under Rule 12(b)(6), not a motion to strike under Rule 12(f).  Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (Ishii, J.); see also Walker, 2016 WL 951635, at *2.  "Where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion."  Kelley, 750 F. Supp. 2d at 1146 (citation omitted); see, e.g., Crisanto v. County of Tulare, 2015 WL 7188165, at *6 (E.D. Cal. Nov. 16, 2015) (construing a motion to strike a request for punitive damages as a Rule 12(b)(6) motion to dismiss).  Defendants' motion is in substance a Rule 12(b)(6) motion because it relies on the sufficiency of Plaintiff's claims for punitive damages and attorney's fees.  The Court, therefore, will consider the motion as though it were correctly denominated as a motion to dismiss for failure to state a claim.

/ / /

1    Plaintiff did not oppose Defendants' arguments.  Accordingly, the Court will dismiss with

2    prejudice Plaintiff's claim for punitive damages against SCCCD and Hentzler, Plaintiff's claim for

3    punitive damages deriving from the Title IX claims, and Plaintiff's claim for attorney's fees

4    deriving from section 1021.5 of the California Civil Procedure Code.

5    **8.      Requests for judicial notice.**

6         The parties ask the Court take judicial notice of several exhibits pursuant to Rule 201 of

7    the Federal Rules of Evidence.  First, Plaintiff asks the Court take judicial notice of the following

8    exhibits because they are government records: one, a letter from Peter Khang of CCCCO to

9    Julianna Mosier of SCCCD, dated December 18, 2018 (Doc. No. 17-2 at Exhibit 1); two, a letter

10   from Julianna Mosier of SCCCD to Plaintiff, dated April 15, 2019 (Doc. No. 17-2 at Exhibit 2);

11   three, a printout from the College's website, entitled "Rights and Responsibilities" (Doc. No. 17-2

12   at Exhibit 3); and four, a printout from the College's website, entitled "Title IX."  Defendants do

13   not object to Plaintiff's request.  Therefore, Plaintiff's request is granted.  See Coppola v. Smith,

14   935 F. Supp. 2d 993, 1013 (E.D. Cal. 2013) (Ishii, J.) (taking judicial notice of government

15   records where no party objected).

16        Second, Defendants request that the Court take judicial notice of the exhibits attached to

17   Plaintiff's complaint.  Because courts may consider exhibits attached to the complaint when

18   adjudicating a Rule 12(b)(6) motion to dismiss, see In re NVIDIA Corp. Sec. Litig., 768 F.3d

19   1046, 1051 (9th Cir. 2014), the Court need not take judicial notice of the exhibits to Plaintiff's

20   complaint.  Accordingly, Defendants' request is denied.

21   **9.      Leave to amend.**

22        Plaintiff asks the Court for leave to amend the complaint if the Court grants Defendants'

23   motion to dismiss.  If a motion to dismiss is granted, "[the] district court should grant leave to

24   amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d

25   958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be

26   futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v.

27   County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).  Therefore, except for the claims that are being

28   / / /

expressly dismissed with prejudice, as noted above, the Court will grant Plaintiff leave to amend the complaint.

## ORDER

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendants' Rule 12(b)(6) motion to dismiss (Doc. No. 9) is GRANTED, in part, and DENIED, in part, as follows:

   a. Plaintiff's first, third, fourth, and fifth causes of action are DISMISSED;

   b. Plaintiff's NIED cause of action is DISMISSED with prejudice;

   c. Plaintiff's Title IX retaliation cause of action is DISMISSED with prejudice;

   d. Plaintiff's Title IX cause of action against Hentzler is DISMISSED with prejudice;

   e. Plaintiff's claim for punitive damages against SCCCD and Hentzler is DISMISSED with prejudice;

   f. Plaintiff's claim for punitive damages deriving from the Title IX causes of action is DISMISSED with prejudice;

   g. Plaintiff's claim for attorney's fees deriving from section 1021.5 of California Civil Procedure Code is DISMISSED with prejudice;

2. Plaintiff is GRANTED leave to file an amended complaint.  If Plaintiff elects to file an amended complaint, then Plaintiff must do so by October 15, 2020.

IT IS SO ORDERED.

Dated:   September 23, 2020   _____

                              SENIOR  DISTRICT  JUDGE